*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* R. WENDZEL, Minor.

UNPUBLISHED
April 09, 2025
11:32 AM

No. 372660
St. Joseph Circuit Court
Family Division
LC No. 2024-000621-NA

Before: GARRETT, P.J., and K. F. KELLY and SWARTZLE, JJ.

PER CURIAM.

The minor child, RW, tested positive for methamphetamine at birth, and, for several weeks following RW's birth, respondent-mother tested positive for methamphetamine and amphetamine. Petitioner, the Department of Health and Human Services (DHHS), petitioned for the trial court to assume jurisdiction over RW and remove the child from respondent's care. Respondent appeals by right the trial court's order authorizing the petition and removing RW from respondent's care following a preliminary hearing. Because the trial court did not clearly err by finding that there existed a risk of harm to RW in respondent's care and that no alternatives to removal were reasonably available, we affirm.

Respondent admitted using methamphetamine while she was pregnant with RW. After RW tested positive for methamphetamine at birth, Children's Protective Services (CPS) became involved. Respondent admitted to a CPS investigator that her relationship with RW's biological father, AG,[1] involved domestic violence and that she had developed a pattern of leaving RW in a bassinet and taking a baby monitor outside to AG's vehicle where she used methamphetamine with him. Families First is an organization that provides intensive in-home services to prevent the out-of-home placement of children. Families First worked with respondent and recommended inpatient substance-abuse treatment, but respondent was reluctant to attend an inpatient facility until the morning of the preliminary hearing when her name was added to a waitlist. Following

---

[1] AG is RW's putative father. He is not listed on RW's birth certificate, and he did not sign an affidavit of parentage.

the testimony, the trial court authorized the petition and ordered that RW be placed in foster care. This appeal followed.

We review for clear error the trial court's factual findings regarding the grounds for removal. *In re Benavides*, 334 Mich App 162, 167; 964 NW2d 108 (2020). A finding is clearly erroneous if, although some evidence supports it, we are left with a definite and firm conviction that a mistake was made following a review of the entire record. *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009).

"After receiving [a] petition, the trial court must hold a preliminary hearing and may authorize the filing of the petition upon a finding of probable cause that one or more of the allegations are true and could support the trial court's exercise of jurisdiction under MCL 712A.2(b)." *In re Ferranti*, 504 Mich 1, 15; 934 NW2d 610 (2019). If the petition is authorized, the court must then determine "whether the child should remain in the home, be returned home, or be placed in foster care pending trial." *In re Benavides*, 334 Mich App at 167 (quotation marks and citation omitted). MCL 712A.13a(9) governs the court's determination whether to place the child in foster care. That provision states:

> The court may order placement of the child in foster care if the court finds all of the following conditions:
>
> (a) Custody of the child with the parent presents a substantial risk of harm to the child's life, physical health, or mental well-being.
>
> (b) No provision of service or other arrangement except removal of the child is reasonably available to adequately safeguard the child from risk as described in subdivision (a).
>
> (c) Continuing the child's residence in the home is contrary to the child's welfare.
>
> (d) Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child.
>
> (e) Conditions of child custody away from the parent are adequate to safeguard the child's health and welfare.

MCR 3.965(C)(2) requires the trial court to make the same findings and "is identical in substance to MCL 712A.13a(9)." *In re Benavides*, 334 Mich App at 168 n 2. Although "[a] trial court is generally not obligated to articulate extensive findings regarding every conceivable detail," if a statute or court rule requires factual findings regarding "an enumerated list of factors, the trial court must make a record of its findings as to each and every factor sufficient for this Court to conduct a meaningful review." *In re Williams*, 333 Mich App 172, 183; 958 NW2d 629 (2020). The preponderance-of-the-evidence standard applies to cases in which the trial court is merely assuming jurisdiction over the child rather than terminating parental rights. *Id*.

Respondent argues that the trial court failed to make factual findings regarding whether allowing RW to remain in her care presented a substantial risk of harm to RW's life, physical health, or mental well-being under MCL 712A.13a(9)(a) and MCR 3.965(C)(2)(a). We disagree. The trial court determined that respondent's mother, with whom respondent lived, had health problems, was confined to a wheelchair, and was unable to care for RW. Nonetheless, respondent repeatedly left RW alone in the home with her mother while she used methamphetamine with AG. The court recognized that respondent's conduct created a "very dangerous situation." The court also found that respondent had a "very dangerous" relationship with AG, who encouraged her to use methamphetamine.

The trial court's findings were not clearly erroneous. The record shows that respondent's living environment involves domestic violence and substance abuse. CPS investigator Rhonda Tutewiler testified that respondent tested positive for methamphetamine five times after RW's birth and that she repeatedly left RW in a bassinet and took a baby monitor outside to AG's vehicle to use methamphetamine with him. Respondent also told Tutewiler that AG punched her in the face and that bystanders had called the police. Tutewiler suggested that respondent obtain a personal protection order against AG, but she failed to do so and continued using methamphetamine with him. Based on respondent's consistent drug abuse and continued involvement with AG, the trial court did not clearly err by finding that there existed a substantial risk of harm to RW's life, physical health, or mental well-being in respondent's care.

Respondent also argues that the trial court failed to make factual findings regarding whether any service or arrangement except RW's removal from respondent's care was reasonably available to safeguard the child from the risk of harm. See MCL 712A.13a(9)(b) and MCR 3.965(C)(2)(b). The record fails to support respondent's argument. The court determined that Tutewiler made reasonable efforts to help respondent with her substance abuse and avoid removing RW from respondent's care. The court's order noted that the DHHS offered respondent several services, including "Families First, Safe Care, Early On, Family Team Meetings, Pivotal referral, Aided in obtaining food [sic], medical and cash assistance." In addition, the court recognized that respondent's environment included "triggers" that made it unsafe for RW to remain in respondent's home.

The record supports the trial court's findings. Tutewiler testified that respondent was still using methamphetamine and failed to comply with the services offered to her. Families First was the most intensive service available, but it was a 28-day program and, at the time of the hearing, respondent's allotted time with that service was about to expire. Tutewiler also looked into placing RW with family members, but respondent's mother was unable to care for RW and respondent's sister was not an option. Therefore, our review of the record shows that the trial court did not clearly err by finding that an alternative to removal was not reasonably available.

Affirmed.

/s/ Kristina Robinson Garrett
/s/ Kirsten Frank Kelly
/s/ Brock A. Swartzle